Filed 7/13/23 (unmodified opn. attached)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>REY ENRIQUE RAMOS FALCON,<br><br>    Defendant and Appellant. | F083577<br><br>(Kern Super. Ct. No. BF174596A)<br><br>**MODIFICATION OF OPINION<br>(NO CHANGE IN JUDGMENT)** |

THE COURT:

It is ordered that the published opinion filed herein on June 26, 2023, be modified as follows:

1.      On page 2, in the first and second paragraphs, the text "premediated" is modified to read "premeditated."

2.      On page 9, in the fifth paragraph, the text "premediated" is modified to read "premeditated."

3.      On page 44, the citation at the end of the first and only full paragraph is modified to read "(See *Lewis, supra*, 88 Cal.App.5th at pp. 1136–1137, review granted [neither step under *Lopez* answers whether the trial court would have imposed an upper term under amended § 1170(b)'s new presumption in favor of a middle term maximum sentence].)"

Except for the modifications set forth, the opinion previously filed remains unchanged.

This modification does not effect a change in the judgment.

MEEHAN, Acting P. J.

WE CONCUR:

SNAUFFER, J.

DeSANTOS, J.

Filed 6/26/23 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>REY ENRIQUE RAMOS FALCON,<br><br>    Defendant and Appellant. | F083577<br><br>(Super. Ct. No. BF174596A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Gregory A. Pulskamp, Judge.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

After shooting his ex-girlfriend (R.S.) and her boyfriend (C.M.), defendant Rey Enrique Ramos Falcon was convicted by jury of the following: two counts of premediated attempted murder (Pen. Code,[1] §§ 187, subd. (a), 189, 664; counts 1 & 4); two counts of assault with a deadly weapon (§ 245, subd. (a)(2); counts 2 & 5); one count of inflicting corporal injury on a prior dating partner (§ 273.5, subd. (a); count 3); and one count of being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 6).

The jury also found true multiple enhancement allegations under section 12022.53, subdivision (d) (counts 1 & 4) (§ 12022.53(d) or section 12022.53(d)); section 12022.53, subdivision (c) (counts 1 & 4); section 12022.5, subdivision (a) (counts 2, 3, & 5); section 12022.7, subdivision (a) (counts 4 & 5); and section 12022.7, subdivision (e) (counts 1, 2 & 3).[2] The trial court imposed the following sentence: two consecutive indeterminate terms of seven years to life for the premediated attempted murder convictions (counts 1 & 4), plus two additional terms of 25 years to life for the respectively attached firearm enhancements under section 12022.53(d). All other enhancements attached to counts 1 and 4 were stayed under section 654. On all remaining offenses (counts 2, 3, 5, & 6), upper terms were imposed but stayed under section 654; the sentences for all attached enhancements were likewise stayed under section 654.

On appeal, defendant argues the sentence should be vacated and remanded for resentencing under *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*), Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Assembly Bill 518) and Senate Bill No. 567 (2021–

---

[1] All further statutory references are to the Penal Code unless indicated otherwise.

[2] Firearm enhancement allegations under section 12022.53, subdivision (b); the prior prison term allegations under section 667.5, subdivision (b); and the personal use of a firearm allegations under section 12022.5, subdivision (a), associated with counts 1 and 4 were dismissed before the case was submitted to the jury.

2022 Reg. Sess.) (Senate Bill 567). Despite the changes in the law after the sentencing in this case, the People argue resentencing is both futile and unwarranted. We conclude that resentencing is required under Senate Bill 567. Therefore, we do not reach defendant's contentions under Assembly Bill 518 and *Tirado*, which may be addressed at the resentencing hearing.

On counts 2, 3, 5 and 6, the trial court properly sentenced defendant under section 1170, former subdivision (b), but after this sentencing and before the judgment was final, Senate Bill 567 was enacted and took effect. Under the former version of California's Determinate Sentencing Law (DSL), the trial court had full discretion to select any of the three terms of imprisonment that it determined best served "the interests of justice" based on facts the trial court was permitted to find itself from a wide variety of sources, including a probation report. (§ 1170, former subd. (b).)

Senate Bill 567 significantly altered the DSL, and the amended law now limits a trial court's discretion to impose an upper term. (§ 1170, subd. (b)(1) (§ 1170(b)(1) or section 1170(b)(1)).) Presumptively, the middle term is the maximum term that may be imposed and it may be exceeded "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term …." (*Id.,* subd. (b)(2).) In addition, the facts underlying those circumstances must be proven, stipulated to by the defendant or evidenced in a specific manner not required under the former law. (*Id.,* subd. (b)(2), (b)(3).)

While courts uniformly agree Senate Bill 567 applies retroactively to nonfinal cases, the Courts of Appeal are currently fractured regarding how to assess the need for resentencing in the context of upper term sentences imposed under section 1170, former subdivision (b). The majority of courts hold that some type of harmless error analysis can be applied to determine whether resentencing is unwarranted. There is disagreement among this majority, however, as to what type of harmless error analysis applies to determine the constitutionality of an upper term sentence. (Compare, e.g., *People v.*

5.

*Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*) with *People v. Dunn* (2022) 81 Cal.App.5th 394 (*Dunn*), review granted Oct. 12, 2022, S275655.)

It is well settled under Sixth Amendment jurisprudence that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S 466, 490 (*Apprendi*).)  As Senate Bill 567 mandates a sentence not to exceed the middle term and permits upward departure from this presumptive maximum sentence only when there are additional factual findings that justify doing so, all additional facts "legally essential" to impose an upper term sentence must be found in a manner consistent with Sixth Amendment principles.  (*Blakely v. Washington* (2004) 542 U.S. 296, 313 (*Blakely*).)  Due to this Sixth Amendment implication, a constitutional harmless error analysis was originally utilized upon retroactive application of the amended DSL to determine whether an upper term sentence, supported by aggravating circumstances improperly found by the trial court rather than a jury, remains viable under the federal constitution after the change in the law.  (See *People v. Flores* (2022) 75 Cal.App.5th 495, 500–501 (*Flores*).)

The appellate courts applying this harmless error test then split over which aggravating-circumstance findings were, as a constitutional matter, legally essential for imposition of an upper term sentence under the amended law, and how to account for violations of state law with respect to aggravating-circumstance findings.  (Compare *Flores, supra*, 75 Cal.App.5th at pp. 500–501 with *Lopez, supra*, 78 Cal.App.5th at p. 467 & fn. 11.)  Thus, in addition to a constitutional harmless error test (over which there is disagreement), several courts implemented harmless error analyses under state law (shaped around the 6th Amend. analysis) to measure the effect of any failure to comply with the new statutory procedural requirements for aggravated-circumstance findings supporting an upper term sentence, and to determine whether resentencing is

required.  (Compare *Lopez, supra*, at pp. 465–467 with *Dunn, supra*, 81 Cal.App.5th at pp. 409–410, review granted.)

A minority of courts hold that application of any harmless error analysis cannot dispositively indicate whether resentencing is unwarranted because the amended law changed more than just the proof requirements for aggravating circumstances for upper term sentences, it imposed a presumptive sentencing preference that altered the trial court's discretion.  (*People v. Lewis* (2023) 88 Cal.App.5th 1125 (*Lewis*), review granted May 17, 2023, S279147; see *People v. Wandrey* (2022) 80 Cal.App.5th 962, 982 (*Wandrey*), review granted Sept. 28, 2022, S275942 ["we must ask both whether we can be certain the jury would have found beyond a reasonable doubt the aggravating circumstances relied on by the court *and* whether the trial court would have exercised its discretion in the same way if it had been aware of the statutory presumption in favor of the middle term"].)  *Lewis* holds that under the new law, resentencing is unwarranted *only if* the upper term sentence (1) remains legally valid under federal and state law (which may involve application of a harmless error analysis); *and* (2) there is a clear indication in the record the trial court would have imposed the upper term sentence had it been aware of its circumscribed discretion under the newly amended sentencing law.  (*Lewis, supra*, at pp. 1137–1138.)

Having granted review in *People v. Lynch* (May 27, 2022, C094174) (nonpub. opn.), review granted August 10, 2022, S274942, the California Supreme Court is now poised to resolve this split of authority.

We agree that the Sixth Amendment is implicated by the changes to section 1170(b), and whether an upper term sentence remains constitutionally valid under the amended law may implicate a harmless error analysis.  In our view, however, the constitutional issue has been examined without any detailed interpretive focus on amended section 1170(b) itself.  Without particularized examination of state law, the specific analytical basis for the split in authority over the Sixth Amendment issue is

7.

elusive; we find no clear reason to depart from the Sixth Amendment analysis applied by our high court in *People v. Black* (2007) 41 Cal.4th 799 (*Black II*) regarding a former version of the DSL.[3]  This analytical neglect of the amended statute has also led, in our estimation, to the application of a state law harmless error analysis maladapted around the Sixth Amendment's jury trial right and not the statute itself.  This framing has produced a harmless error analysis that fails to recognize statutory noncompliance as error and measure the effect of statutory noncompliance.  As we will explain, this adaptation estimates reasonable probabilities of a more favorable outcome for the appealing party without removing the error from the calculus.  And, in practical effect, this test nullifies the statute's new requirements by signaling that statutory compliance, particularly with respect to prior conviction findings, is unnecessary.

Moreover, no harmless error analysis under federal or state law properly accounts for how the presumptive middle term maximum sentence affects the trial court's sentencing discretion.  The statute's plain language creates an express presumption against the imposition of an upper term sentence, even when properly proven aggravating circumstances exist:  a trial court must decide whether the existence of properly proven aggravating circumstances justify, not just the term selected, but upward departure from the presumptive rule itself.  The presumption bears weight in this determination.  As a result, the trial court no longer has full discretion to impose an upper term sentence without the weight of any presumption against it, as it did under the former version of the DSL.

Such presumptions affecting the trial court's sentencing discretion that are enacted in new legislation or by judicial precedent have been recognized as key ameliorative

---

[3]  *Black II* was decided after the United States Supreme Court reversed and remanded *People v. Black* (2005) 35 Cal.4th 1238 for further consideration in light of *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*).  (*Black v. California* (2007) 549 U.S. 1190, 1199.)

8.

changes in the law, including those implemented by Senate Bill 567. In this situation, similar to other ameliorative and retroactively applied law that affects a court's sentencing discretion, the standard articulated by the California Supreme Court in *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*) governs the remedy determination and ultimately requires resentencing unless the record clearly indicates the trial court would have imposed the upper term had it known of the new presumptive middle term. (*Id.* at p. 1391.)

Based on our interpretation of the statute, an upper term sentence that remains legal under federal and state law must still be evaluated under *Gutierrez*'s clear indication test. We, therefore, join *Lewis* and hold that upon retroactive application of Senate Bill 567 to upper term sentences imposed under section 1170, former subdivision (b), resentencing is unwarranted *only if* two requirements are met: (1) the upper term sentence remains legally valid under federal and state law, *and* (2) there is a clear indication the trial court would have imposed the upper term sentences had it been aware of its circumscribed discretion under the newly amended sentencing law. (*Lewis, supra*, 88 Cal.App.5th at pp. 1137–1138, review granted.) The trial court in this case made its sentencing decision in the absence of the new presumption against exceeding the middle term, and the record does not clearly indicate that the court would have imposed upper term sentences had it been aware of the new constraint on its discretion. We believe *Gutierrez* is binding and the appropriate remedy is to remand for the sentencing court to exercise its newly informed and circumscribed discretion in the first instance.

## FACTUAL BACKGROUND

Defendant and R.S. began dating around 2011, but they broke up in 2014 or 2015. In 2015 or 2016, although she was still romantically involved "[o]n and off" with defendant, R.S. began dating C.M. R.S. continued her sexual involvement with both men until October 2018. At some point in October 2018, R.S. went to the residence where defendant lived with his mother; R.S. and defendant had an argument about her cell

9.

phone, and an altercation ensued where defendant shoved R.S., took her phone and her car keys, and left the residence. He eventually returned the items to R.S. later that night, but R.S. had no further contact with him for about a month, until November 22, 2018.

In the early morning of Thursday, November 22, 2018, C.M. was sleeping over at R.S.'s house where she and her two young sons lived. Around 3:00 a.m., a motion detector around the carport outside alerted and awoke both C.M. and R.S. C.M. walked to the kitchen window, turned on the porch light, saw someone outside in the driveway and tapped on the glass to scare the person away. C.M. told R.S. to call the police because there was a man outside, and she used her cell phone to call 911. R.S. told the dispatcher she could see a person outside her house, and R.S. went to the back door and opened it to see if that person was still outside. C.M. was standing behind her when R.S. opened the back door, and he opened the door a little bit more. At that point, a man appeared by the wooden fence near the carport. The man said, "'What's up,'" and C.M. responded, "'What's up.'" At that point, both R.S. and C.M. recognized defendant, who was wearing a sweatshirt with the hood up and had on eyeglasses. Although C.M. had never met defendant in person, he recognized defendant from photos he had seen previously.

As soon as C.M. responded to defendant, both C.M. and R.S. saw defendant pull out a gun from the front pocket of his sweatshirt, point it, step forward and start shooting at them. When R.S. and C.M. heard the gunshots, they closed the door as shots continued to be fired through the door; R.S. was still on the phone with the 911 dispatcher. R.S. went to her sons' bedroom and told her oldest son to call his maternal grandmother, which he did. When she shut the door to the boys' room, she discovered she had been shot. When she went back to check on C.M. in the kitchen, she found him leaning against the cabinet holding his stomach as he too had been shot and suffered wounds to his abdomen, thigh and leg. R.S. was shot near her right hip.

When the police arrived, R.S. told them her ex-boyfriend, defendant, had shot both her and C.M. She described defendant's car as a gold-colored Chevrolet Monte Carlo. C.M. also identified defendant as the shooter and said that he had been shot three or four times while he was standing in the hallway looking out the door. He described defendant as wearing a gray sweatshirt, a hat and reading glasses. C.M. got the best look at defendant when R.S. opened the door and saw that he had a black handgun.

Police found two bullets inside the hallway near the north door exit of the residence, which were both .380-caliber. In the driveway, they found four spent shell casings, also .380-caliber. A neighbor reported hearing five gunshots, saw someone running, and saw that person get into a "[g]oldish" colored four-door Chrysler and drive away. The neighbor thought there were more people inside the car, but the windows were tinted.

R.S. and C.M. were interviewed by police again at the hospital and both again identified defendant as the shooter; C.M. picked defendant out of a photographic lineup, and identified defendant again at trial.

Defendant's mother testified that on the night of the shooting, defendant was living at her house, had gone to bed around 10:30 p.m. that night, and she saw him the next morning around 7:00 a.m. She had no reason to believe defendant left the home at any point that night because her four dogs "get exasperated very easily" and would bark at any noise. She testified the car defendant was driving at that time was a gold-colored, two-door Monte Carlo.

The jury convicted defendant on all charged counts and found true all special enhancement allegations. The trial court imposed the following sentence: two consecutive terms of seven years to life for the premediated attempted murders, plus two terms of 25 years to life for the attached firearm enhancements under section 12022.53(d) (counts 1 & 4). The court imposed upper terms on each of the remaining counts 2, 3, 5 and 6, but stayed the punishments under section 654. As for all the remaining

11.

enhancements, the court imposed upper five-year term sentences under section 12022.7, subdivision (e) (counts 1, 2 & 3) and the upper 10-year term sentences under section 12022.5, subdivision (a) (counts 2, 3, & 5). The court also imposed three-year terms for the enhancements under section 12022.7, subdivision (a) (counts 4 & 5), and terms of 20 years to life under section 12022.53, subdivision (c) (counts 1 & 4). Each of the terms for these remaining enhancements was stayed under section 654.

## DISCUSSION

### I.    Senate Bill 567

The trial court sentenced defendant on September 29, 2021. Under section 1170, former subdivision (b) and section 1170.1, the trial court imposed upper term sentences on counts 2, 3, 5 and 6, and imposed the upper term on certain enhancements. Effective January 1, 2022, and while this appeal was pending, section 1170, former subdivision (b), and section 1170.1 were significantly amended by Senate Bill 567.

The parties agree, as do we, that the amendments under Senate Bill 567 apply retroactively to nonfinal cases such as this. (*Lewis, supra*, 88 Cal.App.5th at p. 1131, review granted; *Flores, supra*, 75 Cal.App.5th at p. 500; *Lopez, supra*, 78 Cal.App.5th at p. 465; *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1108–1109 (*Zabelle*).) Nevertheless, the parties dispute how these amendments affect the upper term sentences the trial court imposed under section 1170, former subdivision (b), and whether application of the amended law requires resentencing. These arguments implicate the issues over which we have noted the Courts of Appeal are presently split.

To best contextualize the parties' specific arguments and the fractured approach courts are employing to resolve these matters, we begin with an overview of the changes Senate Bill 567 made to the determinate sentencing scheme in contrast to the former version. This overview will be followed by an explanation of the parties' arguments, and a summary of the legal background that led to the current split of authority in applying the amended law retroactively. From this background, we will proceed to consider the

various harmless error analyses in light of our interpretation of amended section 1170(b); frame what is, in our view, the appropriate analysis to determine the need for resentencing in retroactive application cases; and apply that analytical structure to the facts presented here.

### A.    Overview of Amendments to Section 1170(b)

Among other things, Senate Bill 567 materially revised the determinate sentencing scheme under section 1170(b).  Under the former version of the statute, determinate sentences were to be imposed as follows:

> "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. At least four days prior to the time set for imposition of judgment, either party or the victim, or the family of the victim if the victim is deceased, may submit a statement in aggravation or mitigation. In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports, including reports received pursuant to Section 1203.03, and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing.  The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected and the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law. A term of imprisonment shall not be specified if imposition of sentence is suspended."  (§ 1170, former subd. (b).)

The trial court had discretion to select from among any of the three terms of punishment provided by a statute and, in selecting from among the terms, the court was free to find facts in mitigation and aggravation based on a wide range of information, including a probation report.  (Cal. Rules of Court, former rule 4.420(d).)

Senate Bill 567 significantly altered this framework.  (§ 1170(b)(1).)  Specifically, newly enumerated section 1170(b)(1) states, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound

13.

discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." In newly enumerated section 1170(b)(2), the statue provides that "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.…" In reaching its sentencing decision, the court may consider prior convictions based on certified records of conviction without first submitting the prior convictions to a jury. (*Id.,* (b)(3).)

The plain language of this new configuration creates a presumption that the middle term is the default maximum sentence, and this new presumption bears weight on how the trial court may exercise its discretion to depart from the presumptive rule. (See *Wandrey, supra*, 80 Cal.App.5th at p. 982, review granted [noting new law specifies a statutory presumption in favor of the middle term].) Unlike its predecessor, the statute does not allow a court to select an upper term simply because it appears warranted and supported by aggravating circumstances. Instead, in distinct contrast with the former sentencing scheme, the court's decision to impose an upper term is now expressly framed around whether properly proven or established aggravating circumstances justify invoking the exception to the rule that the middle term is the default maximum sentence.

Senate Bill 567's legislative history is express that section 1170(b)(1) was intended to create a presumption: "[Senate Bill] 567 creates a presumption of sentencing judgement [*sic*] not to exceed the middle terms .…" (Sen. Com. on Public Safety, Analysis of Sen. Bill 567, as amended Mar. 9, 2021, p. 3 [quoting bill's author's comments].) Comments by the bill's author, which were incorporated into a subsequent bill analysis, indicate this new presumption in section 1170(b)(1) coupled with the aggravating-circumstance proof requirements in section 1170(b)(2) were aimed to "'ensure that the harshest sentences receive the greatest scrutiny and justification before

14.

they are meted out.'" (Assem. Floor Analysis, 3d reading analysis of Sen. Bill 567, as amended July 1, 2021, p. 2 [incorporating bill's author's comments into bill analysis report]; see *In re Jennings* (2004) 34 Cal.4th 254, 264 [considering author's comments that were incorporated into the bill's subsequent analysis with no contrary statements of intent in the legislative history].)

Such a statutory presumption in favor of a particular term has a limiting effect on the trial court's discretion. (*Gutierrez, supra*, 58 Cal.4th at p. 1382 [a statutory preference in favor of a particular sentence circumscribes a court's discretion].) Defendants are entitled to sentencing decisions made in the exercise of informed discretion, and a court that is unaware of the scope of its discretionary powers can "'no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.'" (*Id.* at p. 1391.) *Gutierrez* teaches that applying retroactive changes to a trial court's sentencing discretion will require resentencing unless the record clearly indicates the trial court would have imposed the same sentence had it known about the limits to its discretion. (*Ibid.*) With this basic framework in mind, we turn to a summary of the parties' arguments.

## B.     Parties' Arguments

The sentencing in this case occurred under the prior version of the statute, before Senate Bill 567 became effective. In retroactively applying the amended law, the parties disagree whether the trial court's imposition of upper term sentences was proper given the new proof requirements for aggravating circumstances, and whether the new law altered the court's sentencing discretion in a manner that warrants resentencing.

Defendant argues the case should be remanded for resentencing because the aggravating circumstances supporting the upper term were not properly proven or established under the new state law requirements and, even if there was compliance with the proof requirements, the original sentence was still not imposed in the exercise of

15.

informed discretion under the amended statute. With no clear indication the trial court would impose the upper term sentences had it been aware of its circumscribed sentencing discretion, defendant argues resentencing is mandated.

The People maintain all of the aggravating circumstances relied on to impose the upper term under the prior version of the statute were based on, or related to, defendant's prior convictions, and there were certified records related to his prior convictions admitted during trial, including a certified copy of defendant's rap sheet. Thus, the People argue the aggravating circumstances relied on to impose upper term sentences were not found in violation of defendant's Sixth Amendment right to a jury trial or in violation of newly amended section 1170(b). Alternatively, the People argue that even if one or more of these circumstances were improperly considered under amended section 1170(b), the error was not prejudicial under the harmless error standard articulated in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*) as adapted and applied in *Dunn* and *Zabelle*.

These arguments directly implicate the split in authority over application of a harmless error analysis to determine the need for resentencing on retroactive application of the amended statute.

### C. Applicable Legal Background

In the context of upper term sentences imposed under section 1170, former subdivision (b), most courts have employed some type of harmless error analysis to determine whether resentencing is unnecessary under the new law. (*Lopez, supra*, 78 Cal.App.5th at p. 467 & fn. 11; *Wandrey, supra*, 80 Cal.App.5th at p. 982, review granted; *Dunn, supra*, 81 Cal.App.5th at p. 408, review granted; *Zabelle, supra*, 80 Cal.App.5th at p. 1113; *People v. Ross* (2022) 86 Cal.App.5th 1346, 1354–1355 (*Ross*), review granted Mar. 24, 2023, S278266; *People v. Butler* (2023) 89 Cal.App.5th 953, 959–960 (*Butler*), review granted May 31, 2023, S279633.) The application of these various harmless error analyses appears rooted in how the Sixth Amendment is

16.

implicated by section 1170(b)(1)'s prohibition on exceeding the middle term and the new state law requirements for proving or establishing aggravating circumstances under section 1170(b)(2) and (b)(3). Indeed, these courts are split on how the Sixth Amendment applies to the amended statute and which type of harmless error analysis should be applied. (*Compare Lopez, supra*, at pp. 465–467 with *Zabelle, supra*, at pp. 1111–1112.) This constitutional focus, while important, has largely overshadowed detailed consideration of the amended statute itself. This has left important questions of state law unanswered, including whether a state law harmless error analysis is ever appropriate in a retroactive context to assess the need for resentencing under the amended law.

Nevertheless, an overview of the Sixth Amendment's relevance to amended section 1170(b) is necessary to adequately preface our discussion of the case authority noted *ante* and our interpretation of the amended state law. This overview will be followed by a summary of the various federal and state law harmless-error analyses courts have implemented to assess the need for resentencing under amended section 1170(b), our concerns about how these tests have been adapted and applied, and our own analysis of amended section 1170(b) and its application to the circumstances of this case.

### 1. Sixth Amendment and California's DSL

"The Sixth Amendment protects the right of a criminal defendant to a trial by jury, and under the Fourteenth Amendment, this protection applies to state criminal proceedings. (*Ramos v. Louisiana* (2020) 590 U.S.__ [140 S.Ct. 1390, 1395–1397].) Among the specific protections included in the jury trial guarantee are the right to have every element of the crime found by a jury (*United States v. Gaudin* (1995) 515 U.S. 506, 511) and the right to have the jury make those findings beyond a reasonable doubt (*In re Winship* (1970) 397 U.S. 358, 364)." (*People v. Catarino* (2023) 14 Cal.5th 748, 754 (*Catarino*).)

17.

The United States Supreme Court explained in *Apprendi* the existence of these rights is not predicated on a distinction between elements of a crime and sentencing factors (*Apprendi, supra*, 530 U.S. at pp. 478, 494), but on whether a required finding exposes the defendant to a greater punishment than that authorized by the jury's verdict (*id.* at p. 494). "While a court may properly exercise its discretion to impose any sentence within the statutory range for a defendant's offense once that range is determined by facts found by the jury, judicial factfinding that 'exposes the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone' violates the Sixth Amendment. (*Apprendi,* at p. 483.)" (*Catarino, supra*, 14 Cal.5th at p. 754.)

Based on this reasoning, *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra*, 530 U.S. at p. 490.) As such, "the Federal Constitution's [Sixth Amendment] jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." (*Cunningham, supra*, 549 U.S. at pp. 274–275.) "[T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." (*Blakely, supra*, 542 U.S. at pp. 303–304.)

California's DSL in effect from 1977 to 2007 assigned to the trial judge, not a jury, the authority to find facts that exposed a defendant to an elevated upper term sentence. The pre-2007 version of section 1170(b), provided that "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." (See Stats. 1976, ch. 1139, § 273, pp. 5140–5141, as amended by Stats. 1977, ch. 165, § 15, pp. 647–649.) The circumstances in aggravation or mitigation were to be determined by the court after consideration of the trial record; the

probation officer's report; statements in aggravation or mitigation submitted by the parties, the victim, or the victim's family; and any further evidence introduced at the sentencing hearing. (Stats. 1976, ch. 1139, § 273, pp. 5140–5141; see *Cunningham, supra*, 549 U.S. at p. 277, citing § 1170, former subd. (b).) The California Rules of Court provided that "circumstances in aggravation" were to be "established by a preponderance of the evidence." (Cal. Rules of Court, former rule 4.420(b).)

In 2007, the United States Supreme Court held this sentencing scheme violated the Sixth Amendment's jury trial guarantee as articulated in *Apprendi* and *Blakely* because it allowed a sentencing judge to impose a term beyond the statutory maximum based on facts not proven to a jury beyond a reasonable doubt or admitted by the defendant. (*Cunningham, supra*, 549 U.S. at p. 293.) The high court explained "California's DSL, and the Rules governing its application, direct the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts—whether related to the offense or the offender—beyond the elements of the charged offense." (*Id*. at p. 279.) Applying *Apprendi* and *Blakely*, the court concluded the middle term under California's DSL was the relevant statutory maximum. (*Cunningham, supra*, at p. 288.) To the extent the DSL allowed a sentencing judge to find facts necessary to impose a punishment exceeding the middle term that were neither established by the jury's verdict, the defendant's admissions, or the defendant's prior convictions, the system did not "withstand measurement against [the high court's] Sixth Amendment precedent." (*Cunningham, supra*, at p. 293, fn. omitted.)

Applying *Cunningham* in *Black II*, the California Supreme Court addressed whether the imposition of the upper term in the circumstances of Black's case violated the Sixth Amendment. Pursuant to the pre-2007 version of the DSL under which he was sentenced, Black argued he had a right to a jury trial on all aggravating circumstances that may be considered by the sentencing court in imposing the upper term, even if one aggravating circumstance was established in accordance with *Blakely*. (*Black II, supra*,

19.

41 Cal.4th at p. 814.)  This was so, Black argued, because selection of the upper term was justified only when the circumstances in aggravation outweigh the circumstances in mitigation—thus, a court could not impose the upper term unless it determined that any aggravating circumstances were of sufficient weight to justify the upper term.  (*Ibid*.)  Accordingly, Black asserted, "if only one of several aggravating circumstances considered by the trial court has been established pursuant to Sixth Amendment requirements, and the upper term sentence is selected, the court has imposed 'punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," [citation] and the judge exceeds his proper authority.'"  (*Ibid.*, quoting *Blakely, supra*, 542 U.S. at p. 304.)

Our high court rejected this argument.  The court observed that "under the line of high court decisions beginning with *Apprendi* …, and culminating in *Cunningham* …, the constitutional requirement of a jury trial and proof beyond a reasonable doubt applies only to a fact that is 'legally essential to the punishment' (*Blakely, supra*, 542 U.S. at p. 313), that is, to 'any fact that exposes a defendant to a greater potential sentence' than is authorized by the jury's verdict alone (*Cunningham, supra*, 549 U.S. at p. [281])."  (*Black II, supra*, 41 Cal.4th at p. 812.)  *Black II* explained that *Apprendi* had "examined the right to jury trial in criminal cases as it existed at common law, [and] recogniz[ed] an 'historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties.'"  (*Ibid.*, quoting *Apprendi, supra*, 530 U.S. at p. 482.)

Yet, at the same time, *Black II* pointed out, *Apprendi* had also observed that "'nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute.'"  (*Black II, supra*, 41 Cal.4th at p. 812, quoting *Apprendi, supra*, 530 U.S. at p. 481.)  Following *Apprendi*, the United States Supreme Court in *Blakely* had "explicitly recognized the

legitimate role of 'judicial factfinding' in indeterminate sentencing, in which the judge may 'implicitly rule on those facts he deems important to the exercise of his sentencing discretion.'" (*Black II, supra*, at pp. 812–813, quoting *Blakely, supra*, 542 U.S. at p. 309.) Based on this, *Black II* reasoned, "so long as a defendant is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, [which effectively makes the upper term the statutory maximum for Sixth Amendment purposes,] the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term … regardless of whether the facts underlying those circumstances have been found to be true by a jury." (*Black II, supra*, at p. 813.)

Under California's pre-2007 determinate sentencing scheme, the sentencing court was required to order imposition of the middle term unless there were circumstances in aggravation or mitigation of the crime. (*Black II, supra*, 41 Cal.4th at p. 808, quoting § 1170, former subd. (b).) Under this framework, the *Black II* court pointed out, the presence of one aggravating circumstance made it lawful for the trial court to impose an upper term sentence. (*Black II, supra*, at p. 813.) So long as one aggravating circumstance was established in accordance with the constitutional requirements, the defendant was no longer *entitled* to the middle term, and the upper term became the statutory maximum for Sixth Amendment purposes. (*Black II, supra*, at p. 813.) The court explained further that a sentencing court's "factual findings regarding the existence of additional aggravating circumstances may increase the likelihood that it actually will impose the upper term sentence, but these findings do not themselves further raise the authorized sentence beyond the upper term. No matter how many additional aggravating facts are found by the court, the upper term remains the maximum that may be imposed. Accordingly, judicial factfinding on those additional aggravating circumstances is not unconstitutional." (*Id.* at p. 815.)

21.

Based on this, the *Black II* court held "as long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of *Apprendi* and its progeny, any additional factfinding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial." (*Black II, supra*, 41 Cal.4th at p. 812.)

Applying this reasoning to the facts before it, our high court noted one of the aggravating facts the trial court relied on to impose the upper term sentence was that force was used against the victim to commit the underlying crime, a fact that was necessarily presented to the jury in the form of a special allegation. This aggravating circumstance, the court reasoned, rendered Black eligible for the upper term under section 1170. (*Black II, supra*, 41 Cal.4th at p. 817.) Beyond that, the trial court had relied on Black's numerous prior convictions as an aggravating circumstance, which the court held came within the prior conviction exception to which no jury trial right applied. (*Id*. at pp. 818–820.) As Black was eligible for the upper term sentence based on at least one aggravating circumstance found in compliance with the Sixth Amendment and the prior conviction exception thereto, the court concluded his right to a jury trial was not violated by imposition of the upper term sentence. (*Black II, supra*, at p. 820.)

### 2. The Harmless Error Test For Sixth Amendment Violations in Sentencing Under the DSL

On the same day it decided *Black II*, our high court issued its opinion in *People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval*), which also presented a question of whether the imposition of an upper term sentence under the pre-2007 DSL violated the defendant's Sixth Amendment rights. Different from *Black II*, none of the aggravating circumstances found by the trial court for imposing the upper term satisfied the Sixth Amendment under *Apprendi*, *Blakely* or *Cunningham*; all were based on the facts underlying the crime, none of which had been admitted by the defendant, established by

22.

the jury's verdict, or involved a prior conviction. (*Sandoval, supra*, at pp. 837–838.) The court concluded the upper term sentence violated the Sixth Amendment, but then proceeded to determine whether that error was harmless. (*Sandoval, supra*, at pp. 838–843.)

The court explained the denial of a Sixth Amendment jury trial right was reviewed under the harmless error standard set forth in *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (*Sandoval, supra*, 41 Cal.4th at p. 838.) However, the relevant question regarding the failure to submit a sentencing factor to a jury was not whether the error contributed to the verdict; rather, the question was whether the jury's verdict would have authorized the upper term sentence had the aggravating circumstance been submitted to the jury. (*Ibid.*) Reiterating its reasoning in *Black II* that only one aggravating circumstance renders a defendant eligible for an upper term sentence and tailoring the *Chapman* error standard to the context, *Sandoval* held that "if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury," the error is harmless. (*Sandoval, supra*, at p. 839.)

### 3. Retroactive Application of Amended Section 1170(b) Implicates the Sixth Amendment

Meanwhile, in response to *Cunningham*, California's Legislature amended the DSL through urgency legislation effective March 30, 2007. (Stats. 2007, ch. 3, § 2, pp. 5–8.) The amended DSL did away with a presumptive middle term and left "the choice of the appropriate term" to the "sound discretion of the court." (Stats. 2007, ch. 3, § 2, pp. 5–8.) The jury's verdict alone was sufficient to render a defendant eligible for an upper term sentence, making the upper term the relevant statutory maximum for purposes of the Sixth Amendment, remedying the prior DSL's constitutional infirmity. (See *Apprendi, supra*, 530 U.S. at p. 481 [observing nothing in the common law history

23.

pertaining to jury trial right in criminal cases "suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute"]; see also *Cunningham, supra*, 549 U.S. at p. 294, fn. omitted [noting some states "have chosen to permit judges genuinely 'to exercise broad discretion … within a statutory range,' which, 'everyone agrees,' encounters no Sixth Amendment shoal."].)

As of January 1, 2022, under the changes effected by Senate Bill 567, a trial court imposing a sentence may no longer select any of the three terms that best serves the interests of justice, but must impose a sentence that does not exceed the middle term, except as provided in section 1170(b)(2). As elements of the offense being punished may not be used to impose an upper term (Cal. Rules of Court, rule 4.420(h)), a defendant is not eligible for an upper term sentence based solely on the jury's guilty verdict for the substantive offense. Thus, the middle term is once again the statutory maximum sentence for Sixth Amendment purposes.

Under section 1170(b)(2), to increase the punishment beyond this middle term maximum, a trial court must now rely on separate aggravating-circumstance findings that it concludes justify upward departure from the presumptive maximum middle term. (*Ibid.*) As additional factfinding is required to exceed the middle term maximum sentence, Sixth Amendment jury-trial-right principles attach to all facts legally essential to imposing an increased sentence. (*Blakely, supra*, 542 U.S. at p. 313 [the constitutional requirement of a jury trial and proof beyond a reasonable doubt applies to a fact that is "legally essential to the punishment"].) Amended section 1170(b)(2) incorporates this jury trial right by requiring that all aggravating-circumstance findings relied on to impose a sentence beyond the middle term be found true by a jury beyond a reasonable doubt. The statute also recognizes two types of facts excepted from this constitutional jury trial right, and provides that aggravating facts stipulated to by the defendant may be considered without a jury finding (*Ibid.*; see *Blakely, supra*, 542 U.S. at p. 303 [facts

admitted by the defendant excepted]) and the sentencing court may also consider prior convictions based on certified records (§ 1170(b)(2), (b)(3); *Apprendi, supra*, 530 U.S. at pp. 489–490 [fact of a prior conviction excepted]).

When amended section 1170(b) is applied retroactively to sentencings occurring under section 1170, former subdivision (b), the issue is whether the aggravating circumstances found by the *sentencing judge*, as the former scheme allowed, and relied on to impose the upper term in the absence of the presumption, now comply with the Sixth Amendment *and* the amended state law.

As noted, the Courts of Appeal have fractured in their approaches for making these determinations, and we turn to those decisions now.

### D.    Courts Applying a Harmless Error Analysis to Assess the Need For Resentencing on Retroactive Application of Amended Section 1170(b)

A majority of courts considering retroactive application of the amended statute to an upper term sentence imposed under section 1170, former subdivision (b), have applied a two-step approach.  (*Lopez, supra*, 78 Cal.App.5th at p. 467, fn. 11; *Wandrey, supra*, 80 Cal.App.5th at p. 982, review granted; *Dunn, supra*, 81 Cal.App.5th at p. 408, review granted; *Zabelle, supra*, 80 Cal.App.5th at p. 1113; *Ross, supra*, 86 Cal.App.5th at pp. 1354–1355, review granted; *Butler, supra*, 89 Cal.App.5th at p. 960, review granted; *Lewis, supra*, 88 Cal.App.5th at p. 1137, review granted; but see *Flores, supra*, 75 Cal.App.5th at p. 500 [need for resentencing of upper term sentence upon retroactive application of amended § 1170(b) determined solely under *Sandoval* harmless error test for 6th Amend. violations].[4])  These approaches incorporate various iterations of harmless error analyses to determine whether resentencing is required when a trial court

---

[4]    Two of the three justices on the panel that decided *Flores* subsequently reasoned in *Ross* that, upon reflection and further developments in the case law, a two-part test was appropriate and adopted *Lopez*'s two-step harmless error analysis.  (*Ross, supra*, 86 Cal.App.5th at pp. 1354–1355, review granted.)

25.

has imposed an upper term sentence under section 1170, former subdivision (b), in a manner that now violates the Sixth Amendment and/or amended section 1170(b) by finding and relying on circumstances not found true by a jury, stipulated to by the defendant, or that involve a prior conviction based on certified records.

The first line of these published cases, which includes *Lopez*, *Ross*, and *Butler*, effectively conclude that under amended section 1170(b), every aggravating-circumstance finding relied on by the trial court to impose an upper term sentence is legally essential to increase the punishment beyond the statutory maximum for Sixth Amendment purposes—i.e., the middle term; thus, all aggravating circumstances relied on to impose the upper term must be found in conformity with Sixth Amendment principles.[5] (*Blakely, supra*, 542 U.S. at p. 313 [constitutional jury trial right applies to facts that are "legally essential to the punishment"]; *Cunningham, supra*, 549 U.S. at p. 281 [constitutional jury trial right applies to "any fact that exposes a defendant to a greater potential sentence" than is authorized by the jury's verdict alone].)

---

[5]  None of these cases provide an express constitutional analysis of amended section 1170(b), but because they all conclude the *Chapman* harmless error test applies to each aggravating circumstance in the first step of their analysis, we presume they find each relied upon aggravating circumstance "legally essential" to increase the punishment above the middle term under the amended statute. (*Blakely, supra*, 542 U.S. at p. 313.) One analytical basis for this position may relate to the fact that we cannot know how each individual aggravating circumstance ultimately influences a trial court's decision to impose an upper term sentence, at least in cases where there is more than one circumstance relied upon. Based on this premise, an argument can be made that all the relied upon aggravating circumstances together should be considered legally essential to the imposition of an upper term sentence, and Sixth Amendment principles are thus applicable to the facts underlying each aggravating circumstance. (See generally *People v. Flores* (June 15, 2022, S274232), conc. statement of Liu, J. [noting "it may no longer be true that 'the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term'"].) On the other hand, defendant is still *eligible* under the amended statute for an upper term sentence based on a single circumstance—i.e., the trial court *could* legally impose the upper term based on one aggravating circumstance. (See *Black II, supra*, 41 Cal.4th at p. 815 ["The issue to be determined in each case is whether the trial court's factfinding increased the sentence that otherwise *could* have been imposed, not whether it raised the sentence above that which otherwise *would* have been imposed."].)

To measure the need for resentencing on retroactive application of amended section 1170(b) to upper term sentences imposed under section 1170, former subdivision (b), these courts apply a two-step harmless error approach. In the first step, these courts determine under the *Chapman* harmless error test (as adapted in *Sandoval*) whether it can be concluded beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt every factor on which the court relied to impose the upper term. If all the factors relied on were properly found under Sixth Amendment principles or can successfully withstand the *Chapman* harmless error test, then these courts conclude the defendant has not suffered any prejudice from the sentencing court's reliance on factors not submitted to a jury and no resentencing is necessary. (*Lopez, supra*, 78 Cal.App.5th at pp. 465–466; *Ross, supra*, 86 Cal.App.5th at pp. 1354–1355, review granted; *Butler, supra*, 89 Cal.App.5th at p. 960, review granted.)

On the other hand, if one or more of the circumstances relied on do not successfully pass this initial harmless error analysis under *Chapman*, then a second step is necessary under *Watson*.[6] The *Watson* harmless error analysis considers whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson, supra*, 46 Cal.2d at p. 836.) Although *Butler* frames its adapted *Watson* harmless error test at this second step slightly differently than *Lopez* and *Ross*, in essence these courts all ask whether the trial court would have imposed a lesser sentence in the absence of the factors that could not be deemed harmlessly considered at the first step.[7] (Compare *Lopez, supra*, 78 Cal.App.5th

---

[6] *Wandrey* agreed with *Lopez* regarding application of *Chapman*, but recognized that constitutional soundness alone did not *preclude* the need for resentencing. *Wandrey* held a reviewing court must ask whether it is "certain the jury would have found beyond a reasonable doubt the aggravating circumstances relied on by the court *and* whether the trial court would have exercised its discretion in the same way if it had been aware of the statutory presumption in favor of the middle term." (*Wandrey, supra*, 80 Cal.App.5th at p. 982, review granted.)

[7] *Lopez*'s and *Ross*'s adaptation of *Watson* considers the reasonable probability the trial court would do the same thing again—i.e., impose the upper term, which is not a result more

27.

at p. 467, fn. 11 ["whether a reviewing court can be certain, to the degree required by …
*Watson*[, *supra*,] 46 Cal.2d [at p. ]836, that the trial court would nevertheless have
exercised its discretion to select the upper term if it had recognized that it could … rely
on only [permissible factors], … rather than all of the factors on which it previously
relied"] with *Butler, supra*, 89 Cal.App.5th at p. 962, review granted [asking "whether it
is reasonably probable that the trial court would have imposed a shorter sentence if it had
relied only on permissible factors"].)

A second line of published cases, which includes *Dunn* and *Zabelle*, also imposes
a two-part test, but differs at the first step regarding the Sixth Amendment issue. These
courts conclude that only one aggravating-circumstance finding is necessary under the
amended statute to render a defendant eligible for an upper term sentence, and thus only
one aggravating circumstance needs to be found in a manner that comports with Sixth
Amendment principles for the upper term sentence to remain constitutionally sound.[8]
According to these courts, whether any remaining circumstances were properly proven or
established is an issue of state law only, to which an adapted *Watson* harmless error test
applies. Thus, under *Dunn* and *Zabelle*, a reviewing court first determines beyond a
reasonable doubt whether the jury would have found one aggravating circumstance true
beyond a reasonable doubt, and then whether there is a reasonable probability a jury
would not have found the remaining aggravating circumstance(s) true beyond a
reasonable doubt. If all the aggravating circumstances relied on by the trial court would

favorable to the appealing party. (*Lopez, supra*, 78 Cal.App.5th at p. 467, fn. 11; *Ross, supra*, 86 Cal.App.5th at pp. 1354–1355, review granted.) As *Lopez* framed the test around *Watson*, we presume it meant to ask the reasonable probability the court would impose a *lesser term* in the absence of the impermissibly considered circumstances.

[8]    See *Black II, supra*, 41 Cal.4th at page 813 ("[S]o long as a defendant is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term … regardless of whether the facts underlying those circumstances have been found to be true by a jury.")

have been proven to these respective standards (or were found properly in conformity with 6th Amend. principles and amended § 1170(b)), any error is harmless and resentencing is not warranted.

If not, the reviewing court moves to the second step and asks whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error is harmless and resentencing is not required. If the answer is yes, the reviewing court must vacate the sentence and remand for resentencing consistent with amended section 1170(b). (*Dunn, supra*, 81 Cal.App.5th at pp. 409–410 & fns. 12, 13, review granted; *Zabelle, supra*, 80 Cal.App.5th at pp. 1113, 1114.)

Finally, a third approach is articulated in *Lewis*. *Lewis* also adopts a two-step approach, which embraces the constitutional analysis endorsed in *Dunn* and *Zabelle*; if the sentence is found to be constitutionally sound at this first step, *Lewis* then applies *Gutierrez* at a second mandatory step. *Lewis* first asks "whether a defendant *could* still lawfully be sentenced to an upper term under federal and state law. This requires [the court] to conclude that the jury would have found at least one aggravating circumstance true beyond a reasonable doubt. (See *Sandoval, supra*, 41 Cal.4th at pp. 838–839; *Zabelle, supra*, 80 Cal.App.5th at pp. 1111–1112.) If the answer to that question is no, then the sentence is invalid and must be vacated, and the matter remanded for resentencing. (See *Sandoval, supra*, at pp. 838–839; *Zabelle, supra*, at pp. 1111–1112.) But if the answer to that question is yes, [the reviewing court] ask[s] whether the trial court *would* impose the same sentence in its informed discretion under amended section 1170, subdivision (b). To answer that question, [the reviewing court] must apply *Gutierrez* and ask whether the record *clearly indicates* that the trial court would have imposed the same sentence under the new law." (*Lewis, supra*, 88 Cal.App.5th at pp. 1137–1138, review granted.) In applying this test to the facts before it, *Lewis*

29.

ultimately concluded none of the aggravating circumstances relied on to impose the upper term sentences were found in conformity with Sixth Amendment principles or passed scrutiny under the *Chapman* harmless error test as articulated in *Sandoval*; thus, the upper term sentence was legally invalid and resentencing was required.  (*Lewis, supra*, at pp. 1138–1139.)

### E.      Applicability of Any Harmless Error Analysis

Turning back to the parties' arguments in this case and the question of whether any of these approaches should be applied here, defendant maintains the aggravating-circumstance findings relied on to impose upper term sentences do not comport with the requirements of amended section 1170(b); and, in any event, amended section 1170(b) altered the trial court's discretion to impose an upper term such that the clearly indicated test applies and mandates resentencing.

The People contend that all of the circumstances relied on to impose upper term sentences were found in conformity with the Sixth Amendment and amended section 1170(b); but if not, the People argue, the harmless error analysis adopted in *Dunn* and *Zabelle* should be applied, any error should be found harmless, and resentencing should not be permitted.

To determine whether the aggravating circumstances here were found in compliance with federal and state law and what analysis governs the need for resentencing, we first consider the various approaches outlined above.  Regardless of the variance in the tests articulated by the decisions summarized, two questions have emerged as the relevant inquiry to determine whether upper term sentences imposed under section 1170, former subdivision (b) require resentencing under section 1170(b) as amended by Senate Bill 567.  First, in light of the aggravating circumstances relied on to originally impose an upper term sentence, the question is whether the upper term still *could* be legally imposed under state and federal law.  The second relevant question, as articulated in *Lopez*, *Dunn*, *Wandrey*, *Zabelle*, *Ross*, *Butler* and *Lewis*, involves an

30.

evaluation of whether a trial court *would* impose an upper term sentence under the new law. (*Lewis, supra*, 88 Cal.App.5th at pp. 1137–1138, review granted.)

While we agree generally with this basic two-step framework, we are unpersuaded that any harmless error approach, applied at either step of the inquiry, can adequately indicate that resentencing is *unnecessary* upon retroactive application of amended section 1170(b). Rather, like *Lewis*, we conclude resentencing is unwarranted in retroactive cases only when the upper term remains legal under state and federal law at the first step; and, if so, pursuant to *Gutierrez* at a mandatory second step, the record *clearly indicates* the trial court *would* impose the upper term had it known the middle term was the presumptive maximum sentence. (*Lewis, supra*, 88 Cal.App.5th at pp. 1137–1138, review granted.)

### 1. Concerns Regarding the Harmless Error Analysis Employed at the First Step

#### a. Concerns Regarding the *Lopez* Line of Cases

As an initial matter, we are unpersuaded by the *Lopez* line of cases regarding the constitutional issue and how those courts apply the *Chapman* harmless error test to determine the need for resentencing at the first step. As to the Sixth Amendment jury trial right, *Black II* highlighted the importance of recognizing "that, under the line of high court decisions beginning with *Apprendi, supra*, 530 U.S. 466, and culminating in *Cunningham, supra*, 549 U.S. 270, the constitutional requirement of a jury trial and proof beyond a reasonable doubt applies only to a fact that is 'legally essential to the punishment' (*Blakely*, *supra,* 542 U.S. at p. 313), that is, to 'any fact that exposes a defendant to a greater potential sentence' than is authorized by the jury's verdict alone (*Cunningham, supra*, 549 U.S. at p.[ 281.])" (*Black II, supra*, 41 Cal.4th at p. 812.)

As explained above, unlike the former version of the statute, amended section 1170(b) now provides that the sentencing court "shall … order imposition of a sentence not to exceed the middle term," except when, and "only when[,] there are

31.

circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term .…" (*Id.*, (b)(1), (b)(2).) The constitutional question under the amended statute is what aggravating-circumstance findings are legally essential to increase the sentence beyond this new middle term statutory maximum: (1) all of those relied on to find exceeding the middle term justified; or (2) only one circumstance because the trial court *could* have legally imposed the upper term based on one circumstance properly found or established and thus making a defendant eligible for an upper term based on that single fact. (*Black II, supra*, 41 Cal.4th at p. 813 ["so long as a defendant is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term … regardless of whether the facts underlying those circumstances have been found to be true by a jury"].)

 *Lopez* subjected all aggravating-circumstance findings to the harmless error analysis under *Chapman* (as that prejudice test was adapted in *Sandoval*), suggesting it had concluded all were legally essential to the imposition of the upper term, but the court never engaged in a constitutional analysis of the amended statute, nor did it expressly hold that *all* aggravating circumstances relied on by the trial court constitute facts that are legally essential to the imposition of the upper term for Sixth Amendment purposes. *Lopez* also did not explain why *Black II*'s reasoning regarding eligibility for an upper term sentence was inapplicable to the new sentencing framework, especially in light of *Lopez*'s recognition that "unquestionably the trial court may still rely on any single permissible aggravating factor to select an upper term sentence under the newly revised triad system." (*Lopez, supra*, 78 Cal.App.5th at p. 467.) In the absence of any specific constitutional analysis of amended section 1170(b) in *Lopez*—or in *Ross* or *Butler*—and because neither party here asserts the *Lopez* line of cases is correct in its application of the Sixth Amendment to the amended statute, we are presently disinclined to adopt these

courts' apparent conclusions on the constitutional issue—i.e., that every single aggravating circumstance relied on by the court to impose the upper term is legally essential to increase the punishment above the middle term.

Additionally, *Lopez*, *Ross* and *Butler* each hold that if any of the aggravating-circumstance findings *cannot* pass the *Chapman* test in the first step of the analysis, a second prejudice test is necessary under *Watson*. (*Lopez, supra*, 78 Cal.App.5th at p. 467, fn. 11; *Ross, supra*, 86 Cal.App.5th at pp. 1354–1355, review granted; *Butler, supra*, 89 Cal.App.5th at pp. 960–962, review granted.) Logically, however, if *all* aggravating circumstances relied on are *legally essential* to increase the punishment beyond the middle term, as these cases appear to hold, then every single one of those aggravating circumstances must be found or established in a manner that comports with Sixth Amendment principles or, alternatively, passes muster under the *Chapman* harmless error test. If *any* facts improperly found cannot survive the *Chapman/Sandoval* harmless error test, then the upper term sentence prejudicially violates the defendant's Sixth Amendment right to a jury trial, and a second prejudice test under *Watson* is moot—resentencing is *required* based on the first step of the analysis.

Thus, even if we agreed with the *Lopez* line of cases as to which facts are legally essential to increase the punishment beyond the middle term for purposes of the Sixth Amendment, we cannot concur with the conclusions these cases draw upon application of this harmless error analysis. At best, *Lopez*'s first step is dispositive *only* of whether resentencing is mandatory because the sentence is unconstitutional—it cannot establish that resentencing is unwarranted. As we will explain, even if an upper term sentence does not violate the Sixth Amendment, that conclusion indicates nothing about whether a court *would* impose an upper term again under the newly revised DSL in view of the new presumptive middle term maximum.

### b. Concerns Regarding the *Dunn* Line of Cases

Similar complications arise under the test articulated in *Dunn* and *Zabelle*. Even to the degree we are persuaded by their Sixth Amendment approach under amended section 1170(b), we question their adaptation of the *Watson* harmless error test as a dispositive means to measure the need for resentencing. The harmless error test under *Watson* asks whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson, supra*, 46 Cal.2d at p. 836.) Once the error is isolated by considering the reasonable probability of a more favorable result in its absence, the effect of that error on the outcome can be meaningfully measured. As the *Watson* test is adapted by the *Dunn* line of cases at the first step, however, the question asked is *not* the reasonable probability of a more favorable result to the appealing party *in the absence of the error*, it is the reasonable probability the aggravating circumstances would not have been found true by a jury beyond a reasonable doubt.[9] Yet, the state law error at issue is not simply that an aggravating circumstance was not presented to a jury and found true—many *potential* aggravating circumstances (beyond stipulations by the defendant or prior convictions) are not considered by a jury and found true. Rather, in finding upward departure from the presumptive rule is justified, it is the trial court's *reliance* on aggravating circumstances not found true beyond a reasonable doubt, stipulated to by the defendant, or properly established under section 1170(b)(3) that is error under the amended statute.

Moreover, a jury finding on any specific aggravating circumstance is not the ultimate outcome at issue as it is in the Sixth Amendment context—the ultimate outcome for state law purposes is the trial court's determination that exceeding the middle term is justified and imposing the increased sentence. Under this adapted *Watson* harmless error

---

[9] The phrasing of a reasonable probability of what a jury would *not* find true perhaps requires some mental gymnastics, but that is an adapted description of a result more favorable to the defendant as to the aggravated-circumstance finding itself.

test, when there is no reasonable probability that a circumstance would not have been found true beyond a reasonable doubt, the trial court's impermissible reliance on that circumstance is transformed into a nonerror under the *Dunn* and *Zabelle* test. The reasonable probability a trial court would impose a lesser sentence *in the absence* of that impermissible reliance is never calculated. The additional reasonable probability test applied at the second step also treats the trial court's impermissible reliance on that circumstance as proper. As a result, neither step of this analysis measures how the ultimate outcome is affected by the trial court's erroneous reliance on such circumstances—i.e., both analyses are conducted without calculating the reasonable probabilities a lesser sentence would be imposed in the absence of the error.

Traditionally, when reviewing courts examine improperly considered sentencing factors under the *Watson* harmless error analysis, the question posed is whether, in the absence of the improperly considered sentencing factor(s), there is a reasonable probability of a more favorable outcome for the appealing party—i.e., the imposition of a lesser sentence. (See *People v. Avalos* (1984) 37 Cal.3d 216, 233 (*Avalos*).) Courts do not first calculate the reasonable probabilities that what made the factor impermissible would not be cured under alternative circumstances, such as a more fully developed record or hypothetical evidence that might be presented to a jury. The adapted *Watson* analysis in the retroactive application context also tends to work an unfairness: it tests reasonable probabilities about jury findings regarding facts to which defendant never knew a jury trial right attached or had an *informed* opportunity to dispute or offer evidence concerning. While this is a concern in the Sixth Amendment harmless error context (*Sandoval, supra*, 41 Cal.4th at p. 839), it is more pronounced in a state law harmless error analysis because *Watson* is a less stringent standard than *Chapman*.

In practical effect, this adaptation of *Watson* sweeps away the statutory requirements necessary to invoke the trial court's discretion to impose a sentence exceeding the middle term. This is particularly true as to reliance on aggravating

circumstances involving prior convictions. Under the *Dunn* analysis, reliance on recitations in a probation report, for example, in lieu of legally required proof of prior convictions under section 1170(b)(3) may be excused under the harmless error test based on a presumption that this information could be easily and readily provable by certified records. It could also be used to make assumptions about what a jury would find true based on the existence of *hypothetical* extra-record information that *might* be admitted. Not only does this type of harmless error test support speculation and broad assumptions about what extra-record evidence might show, it indicates the trial court's improper reliance solely on a probation report to determine prior convictions or related facts will always be harmless and nullifies the statutory requirements. In other words, a trial court will never be required to rely on certified records in considering prior convictions, nor will a jury ever have to determine the truth of prior convictions, when the failure to properly establish or prove prior convictions is not assessed as an error under the *Watson* test because there is a probation report to rely upon. Had the Legislature deemed probation reports sufficient to establish prior convictions, it would not have eliminated their use, as permitted under the prior version of the statute, and required certified records under section 1170(b)(3).

Moreover, it is unclear whether any type of state law harmless error analysis should apply in cases where not a single aggravating-circumstance finding properly complies with the statutory requirements—for example, where all aggravating circumstances relied on to impose the upper term involve prior convictions that are not based on certified records of conviction as required under section 1170(b)(3).[10] The circumstances presented in such a situation are analogous to an unauthorized sentence

---

[10] For purpose of this example, we presume prior conviction findings made from a probation report would remain *constitutionally* sound. (See *People v. Towne* (2008) 44 Cal.4th 63, 76, 82 (*Towne*) [10 prior convictions found from a probation report used to support aggravating circumstance that prior convictions were numerous].)

imposed under section 667.6, subdivision (c).  Under that statute, the sentencing court may, in its discretion, impose a full, separate and consecutive term sentence in lieu of the sentence provided under section 1170.1 for each violation of an offense specified in section 667.6, subdivision (e), if the crimes involve the same victim on the same occasion.  (§ 667.6, subd. (c).)

In that context, the trial court exceeds its legal authority to impose a full, separate consecutive sentence under section 667.6, subdivision (c), if all of the necessary prerequisites for such a discretionary choice are not met.  (See *People v. Goodliffe* (2009) 177 Cal.App.4th 723, 726, 732 [vacating as unlawful trial court's discretionary election to impose fully consecutive sentence under § 667.6, subd. (c), because the requirements for that sentencing choice were not satisfied]; see also *People v. Maharaj* (2012) 204 Cal.App.4th 641, 650 [finding fully consecutive sentences were not unauthorized because although § 667.6, subd. (c) requirements were not met, the requirements of § 667.6, subd. (d) were and that statute mandated fully consecutive sentences].)  Because section 1170(b)(1) now precludes the imposition of a term exceeding the middle term except when, and "only when" (*id.,* (b)(2), specific prerequisites are met, an upper term sentence imposed in the absence of any essential prerequisites is arguably an unauthorized sentence to which a harmless error analysis does not apply.  (See *In re Birdwell* (1996) 50 Cal.App.4th 926, 930 ["An unauthorized sentence is just that.  It is not subject to a harmless error."]; see also *People v. Cabrera* (2018) 21 Cal.App.5th 470, 478 [harmless error doctrine does not apply to an unauthorized sentence].)  We are skeptical that an upper term sentence imposed without a single *properly* established aggravating circumstance necessary to invoke any discretion to impose an upper term can be deemed a harmless sentencing error, and we question whether an adapted *Watson* harmless error test adequately addresses whether an upper term sentence could be lawfully imposed under amended section 1170(b) in such a circumstance.

### c. Neither *Dunn* Nor *Lopez* Line of Cases Account For Altered Scope of Sentencing Discretion or *Gutierrez*

Yet even if we set these concerns aside, the *Dunn* and *Zabelle* harmless error analysis suffers the same fatal deficiency as that of the *Lopez* line of cases: it does not adequately assess whether the upper term imposed under the former statute *would* be imposed again under the amended statute. Amended section 1170(b) significantly revised the triad system that had been in place under the former version of the DSL. The newly amended DSL imposes a presumptive middle term maximum sentence the trial court has no discretion to exceed without the existence of aggravating circumstances, proven or established in a particular manner, which justify exceeding the middle term. This change in the law had a crucial limiting effect on the trial court's discretion to impose an upper term sentence. As upper term sentences imposed under section 1170, former subdivision (b), were not made under the lens of this new presumptive middle term maximum sentence, such sentencing decisions were not made in the exercise of informed discretion under amended section 1170(b) as required. (*Gutierrez, supra*, 58 Cal.4th at pp. 1382, 1391 [a change in mandatory sentencing presumption alters the sentencing court's discretion and the need for resentencing is ascertained under the clearly indicated test].)

We share *Lewis*'s view that none of the various harmless error approaches adequately account for the altered scope of the trial court's discretion to impose an upper term, nor do they give effect to our Supreme Court's decision in *Gutierrez*. (*Lewis, supra*, 88 Cal.App.5th at p. 1134, review granted ["In our view, the problem with these cases is that they do not properly account for our Supreme Court's decision in [*Gutierrez*]."].) No harmless error analysis may rightly *preclude* the need for resentencing at the first *or* the second step. Rather, to properly conclude that resentencing is unwarranted upon retroactive application of amended section 1170(b), an

upper term sentence must remain legal under federal and state law; *and* it must pass *Gutierrez*'s clearly indicated test.

To explain this conclusion and our critique of the harmless error approach in this regard, we must return to section 1170(b). When we examine the statute's language, particularly in light of our high court's reasoning in *Gutierrez*, it compels the conclusion that the presumptive middle term maximum sentence provided in section 1170(b)(1) meaningfully alters the scope of the trial court's discretion to impose an upper term sentence because it places weight on the scale in favor of the middle term that was not present under the prior version of the statute. In our estimation, any interpretation of the statute that does not give effect to section 1170(b)(1)'s proscription on exceeding the middle term is unreasonable and cannot be squared with *Gutierrez*'s discussion regarding the effect sentencing presumptions have on the scope of the trial court's discretion.

### 2. Amended Section 1170(b) Narrows Sentencing Discretion That Is Not Accounted For By Any Harmless Error Analysis

"The proper interpretation of a statute is a question of law we review de novo." (*People v. Lewis* (2021) 11 Cal.5th 952, 961.) In cases involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose, and courts begin by examining the statute's words, giving them a plain and commonsense meaning. (*Ibid.*) "'"[W]e look to 'the entire substance of the statute … in order to determine the scope and purpose of the provision .… [Citation.]' [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute .…" [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment … by considering the particular clause or section in the context of the statutory framework as a whole.'"'" (*Ibid.*)

We begin our statutory analysis by recognizing again how significantly Senate Bill 567 revised the existing determinate sentencing scheme under the DSL. Under the former version of section 1170(b), when a statute specified three possible terms, the

choice of the appropriate term (lower, middle or upper) rested "within the sound discretion of the court." (§ 1170, former subd. (b).) The trial court was permitted to find all facts in aggravation and could make these findings based on a wide array of documents and evidence, including probation reports, and could select the term that "best serve[d] the interests of justice." (*Ibid.*) There were no statutory sentencing preferences among the three terms, and there were no proof requirements for aggravating circumstances relied upon to impose any particular term of imprisonment. (*Ibid.*)

Senate Bill 567 meaningfully altered this framework by amending section 1170(b) and adding newly enumerated section 1170(b)(1), which states, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." Section 1170(b)(1) supplies the court with full discretion to select either the lower or the middle term, but it plainly and expressly commands the court "not to exceed" the middle term. This prohibition is new, and it is sea change from section 1170, former subdivision (b), which allowed the court full discretion to select an upper term so long as it served the best interests of justice. This new sentencing presumption circumscribes the sentencing court's discretion to impose an upper term because the statute now states a preference for a term of imprisonment not exceeding the middle term. (*Gutierrez, supra*, 58 Cal.4th at p. 1382 [a statutory preference in favor of a particular sentence circumscribes a trial court's discretion].)

Also newly added, section 1170(b)(2) states, in relevant part, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial…."

This exception is fully consistent with section 1170(b)(1)'s presumptive rule. Section 1170(b)(1)'s proscription from exceeding the middle term is not followed in section 1170(b)(2) by a discretionary option to select an upper term sentence if, in the court's discretion, such a sentence is warranted due to aggravating circumstances. The exception is not framed electively with an *unless* or an *or* option, but as an exception that may occur "only when" aggravating circumstances "justify" it. (*Ibid.*) This wording reflects that a court may not simply select an upper term because it appears justified by aggravating circumstances; rather, it is that a court, *bound not to exceed the middle term*, may conclude this presumptive rule is overcome "only when" (*ibid.*) there are aggravating circumstances to justify upward departure from it. In distinct contrast with the former sentencing scheme, the court's decision to impose an upper term is now expressly framed around whether circumstances justify departing from the rule that the middle term is the default maximum sentence.

This is further reflected by section 1170(b)(2)'s phrasing. Section 1170(b)(2) allows the court to "impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term …." The word "justify" is followed by repetition of the phrase "the imposition of a term of imprisonment exceeding the middle" (*ibid.*) that tracks the wording of section 1170(b)(1)'s presumptive rule that a trial court "order imposition of a sentence not to exceed the middle term …." This language choice emphasizes there must be circumstances that not only justify an upper term sentence, but that justify upward departure *from the presumptive rule*. Thus, when a court weighs aggravating circumstances under the revised statutory scheme, it does so under the weight of a new statutory preference in favor of "a sentence not to exceed the middle term," and the trial court's discretion to impose an upper term is circumscribed to that extent. (*Ibid.*)

41.

Any contrary interpretation that fails to recognize how this presumption affects the trial court's discretion to impose an upper term under section 1170(b)(2) is unreasonable. This is so because such an interpretation would require recasting the plain language of section 1170(b)(1)'s presumptive preference into an equally free discretionary choice between the upper and middle terms so long as properly proven aggravating circumstances exist. This effectively excises section 1170(b)(1) from the statute and functionally allows the court the same discretion to select any of the three terms as under the prior version of the statute. Interpreting section 1170(b)(1) in such a manner subverts longstanding statutory construction rules, which demand that we "take 'the language … as it was passed into law, and [we] must, if possible without doing violence to the language and spirit of the law, interpret it so as to harmonize and give effect to all its provisions.'" (*People v. Valencia* (2017) 3 Cal.5th 347, 409–410.) We cannot interpretively refashion section 1170(b)(1) out of existence: if section 1170(b)(1)'s clear presumptive preference has no effect on how the trial court exercises its discretion to depart from that rule under section 1170(b)(2), then section 1170(b)(1) serves no purpose except to implicate the Sixth Amendment. (*People v. Fontenot* (2019) 8 Cal.5th 57, 73 ["whenever reasonably possible, courts avoid reading statutes in a way that renders 'meaningless' language the Legislature has chosen to enact"].)

To that end, there was no need for the Legislature to include section 1170(b)(1) merely to trigger Sixth Amendment protections with respect to aggravating-circumstance findings and incorporate them into the statute. The Legislature could have retained the *post*-2007 sentencing structure allowing the trial court to select any of the three terms in its discretion, and simply required the circumstances supporting an upper term be proven to the standards articulated in Senate Bill 567. Instead, it chose to expressly bind a sentencing court to a middle-term maximum sentence to be exceeded "only when" aggravating circumstances justify upward departure from that presumptive rule. (§ 1170(b)(2).) This comports with Senate Bill 567's author's comments, incorporated

42.

into a subsequent bill analysis, reflecting strong concerns about the counterproductive effects of long sentences and the need to ensure that the harshest sentences receive not only the greatest scrutiny but also *the greatest justification* before they are imposed. (Assem. Floor Analysis, 3d reading analysis of Sen. Bill 567, as amended July 1, 2021, p. 2; see *In re Jennings, supra*, 34 Cal.4th at p. 264 [considering author's comments that were incorporated into the bill's subsequent analysis with no contrary statements of intent in the legislative history].)

### a. *Gutierrez* Confirms Statutory Interpretation

Section 1170(b)(1)'s clear presumptive sentencing preference meaningfully circumscribes the trial court's discretion to impose an upper term under section 1170(b)(2), and we find no other reasonable interpretation. While the statute's plain language compels this conclusion, our high court's decision in *Gutierrez* confirms it. *Gutierrez* addressed a presumption that is squarely analogous to section 1170(b)(1) and explained how such a sentencing preference circumscribes the trial court's discretion. There, in light of *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*), the court examined a judicially construed presumption under section 190.5, subdivision (b), that favored a sentence of life without parole (LWOP) for 16- to 17-year-old juvenile offenders convicted of special circumstance murder. (*Gutierrez, supra*, 58 Cal.4th at pp. 1360–1361.) In disapproving this presumption, the court explained that although a rule in favor of LWOP did not eliminate a trial court's discretion to make an individualized sentencing decision required under *Miller*, the presumption expressed a preference for LWOP and circumscribed the trial court's discretion to that extent. (*Gutierrez, supra*, at pp. 1381–1382.)

The court reasoned, "[i]t is one thing to say that a court, confronting two permissible sentencing options, may impose the harsher sentence if it finds that sentence justified by the circumstances. It is quite another to say that a court, bound by a

43.

presumption in favor of the harsher sentence, must impose that sentence unless it finds good reasons not to do so." (*Gutierrez, supra*, 58 Cal.4th at p. 1382.) Because of the presumption's effect on the trial court's discretion to select the lesser sentence, its imputation would create a serious constitutional question under *Miller*, and our high court declined to interpret section 190.5, subdivision (b), to include it. (*Gutierrez, supra*, at p. 1382 [given *Miller*'s conception of a proper individualized sentencing inquiry, a "serious constitutional concern would arise" if § 190.5, subd. (b) were interpreted to include a rule circumscribing the court's discretion by presuming in the first instance LWOP is the appropriate sentence for special circumstance murder committed by 16- or 17-year-old juvenile].)

The court ultimately concluded that LWOP sentences imposed in this context while the presumption was legally in effect could not reflect an exercise of the sentencing court's informed discretion. (*Gutierrez, supra*, 58 Cal.4th at pp. 1390–1391.) The necessary remedy was to remand for resentencing unless the record clearly indicated the trial court would have reached the same conclusion even if it had been aware of the scope of its discretion. (*Id.* at p. 1391.)

The reasoning in *Gutierrez* applies with equal force to amended section 1170(b)(1)'s presumptive middle term maximum that can be exceeded only when aggravating circumstances justify doing so. Newly amended section 1170(b)(1) and section 1170(b)(2) state an explicit preference for a middle term maximum sentence that was merely inferable about LWOP from the language of section 190.5, subdivision (b). These two subdivisions of section 1170(b) circumscribe the court's discretion by creating an express rule that, in the first instance, the middle term is the maximum appropriate sentence just as the interpreted rule in favor of the harsher sentence in *Gutierrez* limited the trial court's discretion by presuming, in the first instance, LWOP was the appropriate sentence. (*Gutierrez, supra*, 58 Cal.4th at p. 1382.) Both presumptions place weight on

the scale in the direction of the sentence they favor before any surrounding circumstances are even considered.

The discretionary limitation means any weighing of aggravating circumstances must occur under the weight of the new rule favoring the middle term as the maximum sentence. For example, suppose a trial court imposed an upper term sentence based on one aggravating circumstance of prior convictions. If that circumstance was deemed properly considered under *Apprendi* and under the new state law requirements, a sentencing court might very well yet conclude under the new sentencing scheme that the exception for exceeding the now presumptive middle term maximum is not justified by that single aggravating circumstance. (See *Gutierrez, supra*, 58 Cal.4th at p. 1382 ["When the choice between two sentences must be made by weighing intangible factors, a presumption in favor of one sentence can be decisive in many cases."].)

For this reason, any prejudice analysis applied to the aggravating circumstances originally considered at best addresses only whether the upper term could be legally imposed under the new law. Even if all of the aggravating circumstances could be deemed permissibly considered, we are still left with the question of whether a sentencing court *would* impose an upper term under the newly altered sentencing framework. (*Gutierrez, supra*, 58 Cal.4th at pp. 1367, 1391 [sentencing court's statement that it had "'thought long and hard about what punishment is appropriate'" and was "'absolutely convinced'" that LWOP was the "'only thing that the Court can do that could redress'" violence inflicted in the case did not clearly indicate LWOP would again be imposed in the absence of the judicially construed statutory preference for LWOP].)

### b. Conclusion: No Harmless Error Analysis May Dispositively Preclude Resentencing at the First Step

In light of this new presumptive maximum middle term, neither the *Dunn* nor the *Lopez* line of cases explain how proper consideration (let alone harmless consideration) of one or all of the aggravating circumstances under the new law reflects a sentencing

decision made in the exercise of informed discretion or how it ensures a defendant has had a fair opportunity to obtain the ameliorative benefit of the law.  All defendants are entitled to the former (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8), and defendants whose judgments of conviction are not final for purposes under *In re Estrada* (1965) 63 Cal.2d 740, 745, are entitled to the latter (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307).  Neither the *Dunn* nor the *Lopez* line of cases give any effect to section 1170(b)(1); rather, they focus solely on section 1170(b)(2) and the procedural requirements for proving aggravating factors.  (*Dunn, supra*, 81 Cal.App.5th at pp. 407–410, review granted; *Lopez, supra*, 78 Cal.App.5th at pp. 467–469.)

At best, all that can be ascertained at any of these courts' threshold step is whether a court *could* legally impose an upper term sentence under the new law given the circumstances considered, not that it *would* do so in the exercise of its informed discretion in the first instance.  (See *Lewis, supra*, 88 Cal.App.5th at pp. 1136–1137, review granted [neither step under *Lopez* answers whether the trial court would have imposed an upper term under amended § 1170(b)'s new presumption in favor a of a middle term maximum sentence].)

While a harmless error test is appropriate for Sixth Amendment purposes, it is not conclusive of whether resentencing is required in light of amended section 1170(b)(1)'s sentencing presumption.  That requires a necessary second step assessed under *Gutierrez*. Moreover, the adapted *Watson* harmless error test does not appear to meaningfully measure the effect of any error on the outcome, nor does the test adequately account for section 1170(b)(1)'s new middle term maximum presumption or our high court's decision in *Gutierrez*.  We are also concerned that *Watson*'s adaptation and application in this retroactive context eviscerates amended section 1170(b)'s new proof requirements, and could be applied inappropriately to find harmless what is actually an unauthorized sentence.  We conclude that the adapted *Watson* test serves no meaningful purpose in assessing whether an upper term could be legally imposed under amended

section 1170(b) or, as discussed below, whether such a sentence *would* be legally imposed again under the amended statute.

### 3.    No Harmless Error Analysis Should Be Applied at the Second Step

Moving to the second step of the analysis, when not all of the aggravating circumstances relied on at the original sentencing hearing were properly or harmlessly considered under the new law, courts such as *Lopez* and *Dunn* invoke a second harmless error analysis to ascertain whether there is a reasonable probability the sentencing court would have imposed a lesser term had it not considered the improper circumstances. For the same reasons articulated above, we join the *Lewis* majority opinion and respectfully depart from *Lopez* and *Dunn* and their adaptation of *Watson* to guide this inquiry at the second step.

The harmless error test under *Watson* has indeed been applied in cases where a sentencing court considered improper sentencing factors. (See *People v. Price* (1991) 1 Cal.4th 324, 492 (*Price*); see also *Avalos, supra*, 37 Cal.3d at p. 233 [improper dual use of facts].) But, in those cases, the underlying sentencing scheme had not changed in the interim. The sentencing court revealed its sentencing choice under a particular sentencing scheme, and the reviewing court decided whether there was a reasonable probability the court's lawful exercise of its discretion on remand would lead it to make a different choice under the same sentencing framework.[11]

While improperly considered sentencing factors may be involved in retroactive application of amended section 1170(b), that is not the only concern. As explained above, the new sentencing scheme has meaningfully altered the scope of the trial court's

---

[11]    Even this application of *Watson* in *Avalos* came with a caveat:  because the pre-2007 DSL contained a presumptive middle term sentence coupled with the requirement that aggravating circumstances must outweigh mitigating circumstances before imposition of the upper term was proper, reviewing courts were also required to reverse when it could not be determined whether the improper factor was determinative for the sentencing court in weighing the circumstances and imposing an upper term. (*Avalos, supra*, 37 Cal.3d at p. 233.)

47.

discretion with the new presumption. When a trial court is unaware of the full scope of its sentencing discretion because, for example, legal presumptions have shifted (*Gutierrez, supra*, 58 Cal.4th at p. 1391) or different discretionary sentencing choices exist, "an application of the 'reasonable probability' standard [under *Watson*] requires the reviewing court to decide what choice the trial court is likely to make in the first instance, not whether the court is likely to repeat a choice it already made." (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 426.)

Different from cases such as *Price* and *Avalos*, where the primary issue involved in application of *Watson* was improperly considered sentencing factors under an *unchanged* sentencing scheme, determining what sentencing choice a trial court would make in the first instance pursuant to amended section 1170(b) becomes a far more speculative proposition under a harmless error test. Trying to assess probabilities under *Watson* in the context of amended section 1170(b) effectively recasts the reviewing court into the role of sentencing court, weighing *for the first time* whether particular aggravating circumstances *justify* exceeding the presumptive maximum middle term. Prognosticating this way carries the risk of denying a defendant one of the primary ameliorative benefits of the new law that contributes to its retroactive application in the first place, effectively thwarting the Legislature.

To avoid unnecessary speculation about what a sentencing court would do in the exercise of its informed discretion in the first instance under amended section 1170(b), the appropriate remedy is to remand for resentencing unless the record "'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*Gutierrez, supra*, 58 Cal.4th at p. 1391.)

In sum, whether resentencing of an upper term sentence is the appropriate remedy on retroactive application of amended section 1170(b) involves two relevant questions. (*Lewis, supra*, 88 Cal.App.5th at p. 1137, review granted.) The first is whether, given the aggravating circumstances considered, the upper term sentence could still be legally

imposed under federal and state law. (*Ibid.*) The answer to that question lies in the application of *Apprendi* and the new state law requirements under amended section 1170(b). But even if an upper term sentence could still be legally imposed given the set of aggravating circumstances relied upon at this step, resentencing then hinges on whether a sentencing court would impose an upper term sentence under the new law. (*Lewis, supra*, at p. 1138.) As the trial court's discretion to impose an upper term sentence has been circumscribed under the new sentencing framework, that inquiry must be made under *Gutierrez.* (*Lewis, supra*, at p. 1138.) Under this analytical structure, we examine the trial court's imposition of upper term sentences upon retroactive application of amended section 1170(b).

F.     **Remand For Resentencing Is Warranted**

Records of defendant's prior convictions, which include a certified California Law Enforcement Telecommunications System (CLETS) report and certified docket reports from the California Justice Information Services (CJIS), show a prior felony conviction on June 22, 2012, for reckless driving while fleeing from police (Veh. Code, § 2800.2) and a felony conviction on October 6, 2016, for driving under the influence (DUI) of alcohol within 10 years of another DUI conviction (*Id.*, §§ 23152, subd. (a), 23550, subd. (a).) These records were admitted at trial in connection with count 6—felon in possession of a firearm. To convict defendant on this charge, the jury was required to find true that defendant suffered at least one prior felony conviction. (CALCRIM No. 2510 [previous conviction of a felony a necessary element under Pen. Code, § 29800, subd. (a)(1)].) The jury made no specific findings as to which (or both) of these convictions it found true in rendering its guilty verdict on count 6, but, as defendant was convicted, the jury necessarily found the fact of one of these prior convictions true beyond a reasonable doubt. Other than these records, a probation report was submitted to the trial court in conjunction with sentencing.

From these records, the trial court imposed upper term sentences on counts 2, 3, 5, and 6 based on the following aggravated-circumstance findings: defendant had "numerous" prior convictions (Cal. Rules of Court, rule 4.421(b)(2)), he had served a prior prison term imposed under section 1170, subdivision (h) (Cal. Rules of Court, rule 4.421(b)(3)), and defendant had performed unsatisfactorily on misdemeanor probation and state parole (*id.,* (b)(5)).

### 1. Whether the Upper Term Sentences Could Be Legally Imposed

We begin with whether the upper term sentences remain lawful under amended section 1170(b).[12] Defendant first argues that while a trial court may consider his prior convictions under section 1170(b)(3), certified records were not submitted to substantiate this aggravating circumstance. The People maintain certified records were admitted at trial showing that defendant's prior convictions as an adult were numerous.

Defendant does not articulate an argument that the certified CLETS report and certified CJIS docket reports do not qualify as certified records of conviction under section 1170(b)(3), and thus we do not reach that issue. Assuming these admitted records qualify as certified records of conviction, they contain evidence of only two prior convictions: one in 2012 for reckless driving while fleeing from police and one in 2016 for a DUI within 10 years of another DUI conviction. Of these two prior convictions, one was necessarily found true by the jury in connection with the conviction on count 6 (felon in possession of a firearm) and constituted an element of that crime; that prior conviction

---

[12] As the requirements under state law frame how the Sixth Amendment applies, and because amended section 1170(b) now effectively incorporates Sixth Amendment principles, it is likely better to consider state law viability before moving to the constitutional analysis—this is particularly true if, as we have questioned, the lack of *any* properly proven or established aggravating circumstances signals an unauthorized sentence under state law. If a circumstance is properly established under the amended law, it almost certainly satisfies Sixth Amendment principles. And, if there are no properly proven circumstances, and this constitutes an unauthorized sentence under state law, then there is no need to consider the constitutional question because resentencing would be required.

50.

could not be used again as a fact to aggravate the sentence on count 6. (Cal. Rules of Court, rule 4.421(h) ["A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term."].) At best, only two prior convictions were properly established and considered by the court under section 1170(b)(3), but only one of those could be considered to aggravate the term on count 6. The probation report indicates defendant had other prior convictions beside these two felonies, but a probation report is not a certified record. (*Dunn, supra*, 81 Cal.App.5th at p. 403, review granted.) We are unaware of any published authority holding one or two prior convictions qualify as "numerous" for purposes of California Rules of Court, rule 4.421(b)(2). (Cf. *People v. Searle* (1989) 213 Cal.App.3d 1091, 1098 [three prior DUI convictions are "'numerous'"].)

Similarly, the aggravated circumstance of defendant's unsatisfactory performance on probation and parole was not found true by a jury beyond a reasonable doubt or stipulated to by defendant. Even assuming, arguendo, this tangential fact comes within the scope of the prior conviction exception outlined in section 1170(b)(3), *certified records* do not establish that defendant's performance on probation or parole was unsatisfactory. The certified records show only the 2012 and 2016 convictions themselves. All that can be gleaned from these records is that the three-year probation imposed as a result of the 2012 conviction would have been completed before the 2016 conviction. Absent additional certified records, there is no factual basis to conclude defendant performed poorly on probation.

The trial court also found that defendant had served a prior prison term under section 1170, subdivision (h) (section 1170(h) or § 1170(h)). Certified records of defendant's 2016 DUI conviction show a sentence under section 1170(h) was imposed for that offense. Defendant argues section 1170(b)(3) relates only to "prior convictions" and this sentencing fact does not come within the limited scope of that exception. Without discussion of the statute, the People dispute defendant's contention by citing the

51.

California Rules of Court and *People v. Flowers* (2022) 81 Cal.App.5th 680 (*Flowers*), review granted October 12, 2022, S276237, which summarily held that prior performance on probation and prior prison terms were properly established by certified records and thus appropriately considered by the trial court under section 1170(b)(3). (*Flowers, supra*, at p. 685.)

There is no indication the *Flowers* court was presented with any argument about whether a prior prison term imposed under section 1170(h) is a fact that fits within the scope of section 1170(b)(3). (*Flowers, supra*, 81 Cal.App.5th at p. 685, review granted.) Without an interpretation issue squarely before it, *Flowers* performed no statutory analysis and merely reached a summary conclusion about section 1170(b)(3) based on California Supreme Court cases concluding that facts about prior prison terms and probation performance come within the *constitutional* exception for prior convictions. (*Flowers, supra*, at p. 685.) *Flowers* offers no persuasive support for the People's position.

Nevertheless, even if the People are correct, this single aggravating circumstance properly proven establishes only that the upper term sentence remains legally viable under both state and federal law. Specifically, under amended section 1170(b)(2), a trial court may still impose an upper term sentence based on one aggravating circumstance the trial court concludes justifies upward departure from the presumptive middle term maximum—the trial court here could have imposed upper terms on counts 2, 3, 5 and 6 based on that single circumstance. (§ 1170(b)(2), (b)(3).) Moreover, facts regarding prior prison terms have been held *not* to implicate a constitutional right to a jury under Sixth Amendment principles. (See *Towne, supra*, 44 Cal.4th at p. 81 ["trial court's conclusion that the charged offense was committed while the defendant was on probation or parole, like a finding of a prior conviction, does not require judicial factfinding"]; *Black II, supra,* 41 Cal.4th at pp. 819–820 [prior conviction exception applies to the circumstance that the defendant had served a prior prison term]; *People v. Scott* (2015) 61

52.

Cal.4th 363, 405 (*Scott*) [relying on *Black II* and *Towne* to hold that prior conviction exception extends to facts about numerosity or seriousness of prior convictions and performance on probation or parole].)[13] Under this jurisprudence, the fact of a prior sentence imposed under section 1170(h) was found without violating the Sixth Amendment, and the sentence also remains constitutionally valid under federal law.

Yet, the continuing legality of the sentence indicates nothing about how the trial court *would* have sentenced defendant under amended section 1170(b), and fails to account for *Gutierrez*. Even if defendant's prior sentence imposed under section 1170(h) is a fact that falls within the scope of section 1170(b)(3), resentencing is unwarranted only if the record clearly indicates the trial court would have imposed the upper term sentences had it known of its more narrowed discretion to impose an upper term under the amended statute. As discussed below, since there is no such clear indication in the record here, resolving the parties' dispute about the scope of section 1170(b)(3) is unnecessary.

Finally, the People argue the probation report supports the trial court's findings with respect to the numerosity of defendant's prior convictions and his performance on probation and parole. According to the People, this allows for a conclusion that any reliance on these improperly proven facts was harmless, and resentencing is unnecessary. We decline to apply the adapted harmless error analysis under state law. As noted, this

---

**13** In reaching its conclusion in *Towne*, our high court relied heavily on its decision in *People v. McGee* (2006) 38 Cal.4th 682, and the factors *Apprendi* pointed to that distinguish recidivism from other matters employed to enhance punishment. (*Towne, supra*, 44 Cal.4th at pp. 79–80.) As *Towne* explained, it had previously rejected a narrow or literal application of the United States Supreme Court's reference to "'the fact of a prior conviction'" in *McGee*. (*Towne, supra*, at p. 79.) *McGee*, however, was disapproved in 2017 by our high court in *People v. Gallardo* (2017) 4 Cal.5th 120, 124–125 in consideration of the United State Supreme Court's more recent decisions in *Descamps v. United States* (2013) 570 U.S. 254 and *Mathis v. United States* (2016) 579 U.S. 500. Whether *Gallardo*'s basis for disapproving *McGee* undercuts the reasoning in *Towne*, *Black II* and *Scott* with respect to the scope of the prior conviction exception may be debatable.

test is inadequate to measure the need for resentencing because its adaptation under *Watson* is flawed, it has the practical effect of nullifying the requirements of the amended statute and it fails to account for *Gutierrez*.[14]

## 2. No Clear Indication Trial Court Would Impose the Upper Term

In examining the clear indication test under *Gutierrez*, we note that the trial court elected to impose an upper term sentence on each conviction on counts 2, 3, 5 and 6; refused to strike the greater firearm enhancements under section 12022.53(d); and elected to impose consecutive rather than concurrent sentences. Additionally, the trial court indicated the circumstances in aggravation significantly outweighed any circumstances in mitigation.

These facts alone, however, are insufficient to demonstrate a clear indication the trial court would impose the upper term again under the weight of the presumptive middle term maximum sentence, particularly when only a single aggravating circumstance relied upon was even arguably properly considered under the amended law. There is nothing in the sentencing record that indicates which aggravating circumstance, if any individually, were determinative to imposition of an upper term, nor is there any signal how heavily the trial court weighed the individual circumstances. There is simply no clear indication in the record that, based on one aggravating circumstance that may or may not have been particularly weighty, *or* even all the circumstances considered

---

**14** With respect to the probation report as a means of proving prior convictions and related facts, we decline to conclude the probation report could contain no mistakes or oversights under the presumption that an official duty is presumed regularly performed, as the People urge us to do. (See Evid. Code, § 664 ["It is presumed that official duty has been regularly performed."].) We also decline the People's invitation to speculate under a harmless error analysis whether these circumstances could be established by extra-record evidence. Even if we believed the harmless error analysis were an appropriate measure of the need for resentencing, we would still decline to apply it in the manner requested. (*Zabelle, supra*, 80 Cal.App.5th at p. 1115, fn. 6 ["If the record is insufficient to support a trial court's findings about a defendant's criminal history, we will not presume the existence of extrarecord materials, however likely they are to exist, to address this insufficiency.'].)

together, the trial court would again find the upper terms justified in view of the presumptive middle term maximum sentence. (See *Gutierrez, supra*, 58 Cal.4th at p. 1391 ["Because the trial courts operated under a governing presumption in favor of [LWOP], we cannot say with confidence what sentence they would have imposed absent the presumption."].) Through no fault of the trial court, without this clear indication, we cannot confidently conclude no miscarriage of justice resulted from the uninformed sentencing discretion exercised under section 1170, former subdivision (b).

G.      **Upper Term Sentences on Enhancements Under Section 1170.1, Subdivision (d)(2)**

We note the trial court also imposed upper terms on the enhancements found true by the jury under section 12022.5, subdivision (a) (counts 2, 3 & 5), and section 12022.7, subdivision (e) (counts 1, 2 & 3) based on the same aggravating circumstances as the substantive offenses, all of which related to prior convictions. As noted, with respect to jury findings on these aggravating circumstances, the jury was asked to consider two prior convictions in association with count 6. As the verdict form did not require the jury to delineate which of those convictions (or both) it found true, only one was *necessarily* found true by the jury as a required element on count 6. There were no other jury findings as to any other prior convictions or related facts.

Under Senate Bill 567, section 1170.1, subdivision (d)(1), now provides that "If an enhancement is punishable by one of three terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term except as otherwise provided in paragraph (2)." Section 1170.1, subdivision (d)(2), in turn, provides "the court may impose a sentence exceeding the middle term only when there are circumstances in aggravation that justify imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

55.

The parties did not address the changes Senate Bill 567 effected with respect to the imposition of upper terms on enhancements, and as resentencing is required, this additional issue is moot. However, we note there is *no prior conviction exception* under state law for imposing an upper term on applicable enhancements. (Compare § 1170(b)(3) with § 1170.1, subd. (d)(1) & (d) (2).) As amended by Senate Bill 567, section 1170.1, subdivision (d)(1) and (d)(2) are now effective, and absent any further relevant change in the law, they must be applied at resentencing.

## II.    Remaining Arguments

As the matter is being remanded for resentencing under amended section 1170(b), defendant's arguments under *Tirado* and Assembly Bill 518 are moot. The parties may present these and all other relevant sentencing arguments, including the amendments to section 1385 effective January 1, 2022, upon resentencing.

## DISPOSITION

The judgment is affirmed, but the sentence is vacated. The matter is remanded to the trial court for a resentencing hearing where further evidence and argument may be received regarding the sentence to be imposed.

MEEHAN, Acting P. J.

WE CONCUR:

SNAUFFER, J.

DeSANTOS, J.

56.